UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| **DAWN BORN,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendants.** | **3:21-CV-3010-MAM**<br><br>**MEMORANDUM OPINION AND ORDER** |

Dawn Born seeks to reverse the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for social security disability insurance (SSDI) benefits. She claims the administrative law judge (ALJ) erred in his determination of her residual functional capacity (RFC) and in his Step Five analysis by using national, rather than regional, job data and in dealing with conflicting vocational evidence. The Court agrees in part with Born and reverses and remands for further proceedings.

## BACKGROUND

At the outset, the Court fully adopts the parties' lengthy Joint Statement of Material Facts (JSMF).[1] To provide background and context for Born's claims, the Court

---

[1] Docket No. 16.

briefly recites some of the facts and case history.

Born applied for disability insurance benefits, alleging disability starting September 19, 2017, because of back and neck injuries, diabetes, high blood pressure, anxiety panic disorder, hypothyroidism, obesity, arthritis, "dyspnealabyrinthitis," and chronic pain. Born (who had been a certified nursing assistant) claimed that her back injury stemmed from a work incident that occurred in June 2016, 15 months before her stated disability onset date, when she injured herself while trying to save a patient from falling.

Born lost at both the initial and reconsideration levels. An ALJ decided against her, finding that, although unable to perform her past relevant work, other jobs existed in the national economy that fit her assigned RFC. The Appeals Council then denied review, allowing the ALJ's decision to stand and be the final one of the Commissioner. Born sought judicial review of the decision by timely filing a civil complaint.[2] The parties consented to this Court handling the case.[3]

## STANDARD OF REVIEW

When reviewing a denial of benefits, a court must determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole and whether

---

[2] *See* 42 U.S.C. § 405(g); Docket No. 1.

[3] Docket No. 9.

the ALJ made any legal errors."[4] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."[5] If, after reviewing the record in a light most favorable to the ALJ's decision,[6] it is "possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision."[7]

## DISCUSSION

The five-step sequential inquiry, prescribed in the Code of Federal Regulations,[8] to determine disability eligibility is as follows:

> 1. Is the claimant currently performing substantial gainful activity (SGA)?
> 2. Does the claimant have a severe impairment?
> 3. Does the impairment meet or equal an impairment listed in Appendix 1?
> 4. Does the impairment prevent the claimant from performing past relevant work?
> 5. Does the impairment prevent the claimant from doing any other work?[9]

At the first step, the ALJ found that Born was not engaged in substantial gainful activity.[10] The ALJ found, at the second step, that Born was severely impaired by

---

[4] *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018).

[5] *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

[6] *Chismarich*, 888 F.3d at 980.

[7] *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

[8] *See* 20 C.F.R. § 404.1520(a)(4).

[9] *Twyford v. Comm'r. Soc. Sec. Admin.*, 929 F.3d 512, 515 n.2 (8th Cir. 2019).

[10] Transcript ("Tr.") 12; *see also* 20 C.F.R. § 404.1571 *et. seq* (substantial gainful
(continued. . .)

3

degenerative disc disease of the lumbar and thoracic spine, arthritis, diabetes, and obesity.[11] The ALJ also found that Born had medically determinable impairments of anxiety and depression but they were nonsevere impairments that only caused mild limitation in her ability to understand, remember and apply information, to interact with others, to maintain concentration, persistence, or pace, and to adapt or manage herself.[12] At Step Three, the ALJ determined that Born did not have an impairment that met, or medically equaled, one of the listed impairments.[13]

The ALJ then found that Born had an RFC for a range of light work and she:

1. Could lift 20 pounds occasionally and 10 pounds less frequently;
2. Could sit for 6 hours and stand or walk for 4 hours in an 8-hour workday;
3. Had no reaching or manipulation limits;
4. Could occasionally climb stairs but could never climb ladders, scaffolds, or similar devices;
5. Could frequently balance, occasionally crouch, kneel, stoop, and crawl but must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery;
6. Was moderately limited, because of chronic back pain, in her ability to carry out any detailed or complex instructions, to maintain extended concentration for those tasks, and to adapt or adjust to major changes in the work routine or setting; and

---

activity).

[11] Tr. 13; *see also* 20 C.F.R. § 404.1520(c) (severe impairment).

[12] Tr. 13-15.

[13] Tr. 15; *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (impairments that meet or equal the impairment listing).

4

7. Would thus be limited to work involving only simple, routine and repetitive tasks of 2 or 3 steps on average.[14]

The ALJ also discussed why he found the state agency consultants' 2018 opinions—but not the 2019 opinions of Born's treating provider (CNP Sue Hogue)—persuasive when constructing the RFC.[15] Based on the RFC, the ALJ found at Step Four that Born could not perform her past relevant work.[16] From there, the ALJ relied on the testimony of vocational expert (VE) Richard Ostrander to find, at Step Five, that there existed jobs "in the national labor market" that Born could perform.[17] The ALJ concluded that Born was not disabled under the Social Security Act.[18]

Born raises two primary issues in her appeal of the Commissioner's decision. The first is whether the ALJ's determination of her RFC was supported by substantial evidence.[19] She says it was not, because the ALJ improperly relied on the state consultants even though new information[20] emerged in the year or so after the agency

---

[14] Tr. 15-16.

[15] Tr. 19-20.

[16] Tr. 20; *see also* 20 C.F.R. § 404.1565 (past relevant work).

[17] Tr. 21; *see also* 20 C.F.R. § 404.1566 (national economy work).

[18] *Id.*

[19] Docket No. 18 at 2.

[20] *See* Docket No. 16, ¶¶ 50-63 (numerous visits to emergency room and clinic and hospital admissions, two MRIs, progressive worsening of symptoms, and opinions as to Born's limitations from her treatment provider).

reviewed the files.[21] She likewise quarrels with the ALJ rejecting Hogue's opinion in favor of the consultants and not explicitly considering the work limitations that Dr. Thomas Ripperda, a rehabilitation physician, placed on her.[22] Second, Born points to problems with the ALJ's Step Five analysis — the apparent failure to properly identify jobs in the national economy and address conflicts in the vocational evidence.[23] The Court addresses each issue in turn.

**A.  RFC Support**

While "a disability claimant has the burden to establish her RFC,"[24] "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case."[25] "An ALJ determines a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and [the claimant's] own description of [her] limitations."[26] Although an "ALJ does not have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped," the ALJ "must not substitute his

---

[21] Docket No. 18 at 2-15.

[22] *Id.*

[23] *Id.* at 15-21.

[24] *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).

[25] *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017).

[26] *Id.* (cleaned up).

opinions for those of the physician"[27] and "some medical evidence must support the determination of the claimant's RFC."[28] "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."[29]

In determining Born's RFC, the ALJ faced a medical record running through 2019, the non-treating state agency consultants' RFC opinions of August 6 and November 2, 2018, Hogue's opinions of Born's limited capabilities from April 9 and September 19, 2019, and Born's own testimony.[30] During the hearing, but before Hogue's assessment was filed and admitted, the ALJ himself noted the "record here … is a little weak – medically" and that "if [he was] going to make a decision, [he would] rather have a better handle on what [Born] can and cannot do. And it's the kind of case that cries out for a consultative exam, [a] physical consultative exam."[31] The ALJ stated

---

[27] *Id*.

[28] *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

[29] *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985)).

[30] Tr. 16-20.

[31] Tr. 64.

7

that he was "going to order a consultative exam,"[32] before later walking the statement back and saying he wanted to review the record.[33]

Ultimately, no exam was ordered, nor was the lack of one explained in the ALJ's October 30, 2019 decision, when he opted to credit the non-treating consultants rather than Hogue.[34] Put another way, before even receiving Hogue's opinions on Born's restrictions, the ALJ was uncomfortable, because of a "weak" record, about making a decision on Born's RFC.[35] That same shaky record was then used to refute Hogue's assessment of Born's capabilities and to form a less restrictive RFC.[36]

---

[32] Tr. 66.

[33] Tr. 79.

[34] *See* Tr. 19 ("[Hogue's] opinions are unpersuasive as they are inconsistent with the record."); Tr. 20 ("The state agency medical consultants opined that the claimant could lift … twenty pounds occasionally and ten pounds frequently…. stand … for four hours in an eight-hour workday and can sit for six hours in an eight-hour workday…. The undersigned finds that these opinions are persuasive as they are consistent with the record.").

[35] *See Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012) ("Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work."); Tr. 64 (ALJ: "[I]f I'm going to make a decision, I'd rather have a better handle on what she can and cannot do."); Tr. 79 (ALJ: "It certainly would have helped if one of her treating doctors had offered an opinion. On the other hand, she does have one provider … who does offer an opinion we'll need to give some weight to.").

[36] *See* Tr. 19 ("[Hogue's] opinions are unpersuasive as they are inconsistent with the record.").

The Court agrees with the ALJ's initial sentiments. The ALJ had before him an uncertain record with a distinct divergence between the opinions of the consultants[37] (who did not consider any medical records beyond October 2018) and Hogue's 2019 opinions[38] (that, while restrictive, were more in line with Born's testimony[39] and came from a treatment provider). Given the admittedly tenuous record and the lack of any contemporary opinions contrary to Hogue's, the ALJ should have ordered a physical consultative examination to provide him with the guidance necessary to make an "informed" RFC decision without having to medically evaluate—himself—the import of the new (after October 2018) evidence.[40]

The failure to order such an exam requires remand, and an order to conduct one.[41] And since the exam will permit a learned determination (one way or the other) of

---

[37] *See* Tr. 91 ("Occasionally … lift … 20 pounds"); Tr. 107 (reaffirming the prior decision).

[38] *See* Tr. 931 ("Occasionally lift … less than 10 pounds").

[39] *See* Tr. 66 (ALJ: "Assuming your testimony's correct, you're probably down to sedentary work at best.").

[40] *See Combs*, 878 F.3d at 647 (finding ALJ failed to fully develop the record when he relied on his own interpretations of terms in treatment records to formulate RFC); *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009) (stating that ALJs may not "play doctor"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) ("[The ALJ] may not simply draw his own inferences about plaintiff's functional ability from medical reports."); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) ("The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole.").

[41] *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("The ALJ is required to
(continued. . .)

Born's RFC, the Court need not delve into the ALJ's ultimate decisions to weigh the consultants' early findings over those of Hogue and not include Dr. Ripperda's 2-days-on-1-day-off limitation for Born in the RFC calculus.

**B.   Step Five**

Because it will remain an issue on remand, the Court next addresses the contested matter of what evidence is necessary to decide "work which exists in the national economy."[42] As a preface, at Step Five, the burden shifts to the Commissioner to provide evidence about work in the national economy that the claimant can do given her RFC.[43] During the evidentiary hearing, Ostrander informed the ALJ that, while Born would be unable able to perform her past work, based on the hypothetical RFC, she could do other jobs such as office helper, cashier II, and mail clerk.[44] Ostrander testified that there were 60,000, 50,000, and 35,000, respectively, of each position available "in the national labor market."[45]

---

order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); *Dozier*, 754 F.2d at 276.

[42] Docket No. 18 at 19-21.

[43] *See* 20 C.F.R. § 404.1560(c); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

[44] Tr. 75-77.

[45] Tr. 77.

Born argues that Ostrander should have provided numbers for the jobs from a regional or multi-regional area, not a purely national one.[46] The Commissioner maintains the national numbers suffice and lays out a pragmatic approach to Step Five[47] that strays from the text of the governing statute.[48] But the text of the statute controls and trumps other considerations.[49]

When interpreting a statute, a court must begin with the plain language of the statute.[50] The relevant statute here defines "disability" as the:

> Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.][51]

Under this definition:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but

---

[46] Docket No. 18 at 20.

[47] Docket No. 20 at 20-28.

[48] *See* 42 U.S.C. § 423(d)(2)(A) (stating what "work which exists in the national economy" means).

[49] *See United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (pointing out that the role of a court is not to rewrite statutes to achieve results that the court deems more desirable); *Nygaard v. Taylor*, 3:19-CV-03016-RAL, 2022 WL 1487455, at *15 (D.S.D. May 11, 2022) ("this Court is bound to interpret and apply the [statute] as it is written, not as how it might or arguably should have been written").

[50] *United States v. Raiburn*, 20 F.4th 416, 422 (8th Cir. 2021).

[51] 42 U.S.C. § 423(d)(1)(A).

> cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. **For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.**[52]

While there may be some ambiguity as to what exactly constitutes a "region,"[53] the statute defines the term of art, "work which exists in the national economy."[54] And that term does not encompass broad national numbers without any local or regional breakdown of them.

To satisfy the Commissioner's burden, work available must be expressed as jobs that exist in significant numbers either in (1) the region where the claimant lives; or (2) several (but not all) regions of the country (i.e., several subdivisions of the country as a whole).[55] Courts in this district have repeatedly held as much, although there is contrary

---

[52] 42 U.S.C. § 423(d)(2)(A) (emphasis added); *see also* 20 C.F.R. § 404.1566 (discussing "work which exists in the national economy"); 20 C.F.R. § 416.966 (same).

[53] *See Svendsen v. Kijakazi*, 1:21-CV-1029-CBK, 2022 WL 2753163, at **17-18 (D.S.D. July 14, 2022) (discussing the meaning of "region").

[54] 42 U.S.C. § 423(d)(2)(A).

[55] *Id.*

...
...
...

authority elsewhere.[56] Having failed to obtain the discrete regional numbers required by statute, the Commissioner has not met her Step Five burden and, on remand, should gather numbers in accord with the statutory text.

## C. Commissioner's Rejoinder

The Commissioner asserts that any error was harmless.[57] Although Born bears the burden of showing prejudicial error,[58] the Commissioner had the burden of proving

---

[56] *See Svendsen*, 2022 WL 2753163, at **15-19; *Melvin W. v. Kijakazi*, 5:20-CV-5050-JLV, 2022 WL 540274, at *3-10 (D.S.D. Feb. 23, 2022); *Heather R. v. Saul*, 4:20-CV-04082-VLD, 2021 WL 3080331, at *23-26 (D.S.D. July 21, 2021); *Benthin v. Saul*, 1:20-CV-01014-CBK, 2021 WL 2982719, at *7-9 (D.S.D. July 15, 2021); *Springer v. Saul*, 4:19-CV-04030-VLD, 2019 WL 4855186, at *33-39, (D.S.D. Oct. 1, 2019); *see also Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004) ("the principal significance of the 'other regions' language in the statute is to prevent the [Commissioner] from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside the region where [the applicant] live[s]'"); *Price v. Comm'r of Soc. Sec.*, 1:16-CV-43-DAS, 2016 WL 7443793, at *2 & n.2 (N.D. Miss. Dec. 22, 2016) (remanding where VE testified there were, nationally, significant jobs in certain industries, but admitted that these industries were not prevalent in Mississippi and provided no estimates of job numbers within the state or region); *but see Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (evidence of 25,000 jobs nationwide satisfied the requirement of showing "work which exists in significant numbers … in several regions of the country" where there was nothing in the number or nature of the jobs to indicate they existed only in limited numbers in isolated regions of the country); *Alice T. v. Kijakazi*, 8:21CV14, 2021 WL 5302141, at **16-18 (D. Neb. Nov. 15, 2021) (collecting cases and deciding that national numbers are sometimes enough to satisfy the statute); *Hayden v. Saul*, 4:19-CV-187-SPM, 2020 WL 888002, at **10-12 (E.D. Mo. Feb. 24, 2020) (total of 200,000 jobs nationally was significant and enough to carry the Commissioner's burden).

[57] Docket No. 20 at 27.

[58] *See Shineseki v. Sanders*, 556 U.S. 396, 409 (2009).

13

that Born had gainful work available to her in the region where she lived or in other regions.[59] Relying exclusively on national numbers to deny Born's disability claim was reversible error. And so was the ALJ's RFC determination, made without a consultative exam. Born is thus entitled to relief—but not to benefits, right now.[60]

The Commissioner asserts next that Born waived the national number identification argument by not objecting during the ALJ hearing.[61] But because social security hearings are not adversarial, not every argument needs to be raised to be preserved for review.[62] Certainly, if Born had not presented the argument in court and then raised it for the first time in an appeal later on, things might be different.[63]

---

[59] *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 1560(c)(2); *Stormo*, 377 F.3d at 806.

[60] *See* Docket No. 21 at 11 ("the ALJ denied Born's claim based on improper evidence, evidence that did not meet the Commissioner's burden or comply with the statute").

[61] Docket No. 20 at 27-28.

[62] *See Carr v. Saul*, 141 S. Ct. 1352, 1362 (2021) (finding circumstances where matters not raised before ALJ were not waived); *Sims v. Apfel*, 530 U.S. 103, 111-12 (2000) (noting that Appeals Council proceedings are non-adversarial and issue-exhaustion is inappropriate for claimants who exhaust administrative remedies); *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (observing that claimant "need not raise every argument to the Appeals Council to preserve his claims for judicial review"); *Harwood v. Apfel*, 186 F.3d 1039, 1042-43 (8th Cir. 1999) (refusing to adopt waiver rule).

[63] *See Roberts*, 222 F.3d at 470 (holding that, absent manifest injustice, a claimant must present arguments to the magistrate judge, or the first adversarial forum, to preserve them for review).

The two cases the Commissioner cites are inapposite.[64] One of them involved a claimant who contended the ALJ erred by not considering the claimant's morbid obesity as an impairment even though the ALJ's decision noted the obesity.[65] But the claimant never alleged any functional limitation as a result of his obesity in his benefits application or during the hearing.[66] Not the same situation as here, where Born raised a Step Five failure to satisfy the controlling statute.[67]

The other case, a Ninth Circuit one, dealt with when a claimant must challenge the evidentiary basis of a VE's job numbers to preserve the issue for judicial review.[68] There, the appeals court explicitly observed that "our holding encompasses challenges based on an alleged conflict with alternative job numbers gleaned from the [County Business Patterns] or the [Occupational Outlook Handbook]."[69] Born makes no such evidentiary challenge in her case. Rather, she claims that the Commissioner did not meet the burden of production, applicable at Step Five,[70] and comply with the statute[71]

---

[64] Docket No. 20 at 27-28.

[65] *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th 2003).

[66] *See id.* (finding claim waived on appeal and "noting that the ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability").

[67] *See* Docket No. 21 at 11.

[68] *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017).

[69] *Id.* at 1109.

[70] 20 C.F.R. § 404.1560(c)(2); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th

(continued. . .)

by putting forth more than just raw national numbers (jobs that existed in the country as a whole).[72]

Finally, the Commissioner takes issue with Born's claim that the ALJ erroneously accepted vocational evidence that conflicted with the Dictionary of Occupational Titles ("DOT")[73] without a reasonable explanation.[74] But because it is remanding the case, the Court need not address the merits of this claim. The ALJ, on remand, should resolve any apparent conflict and provide an appropriate explanation before relying on such evidence to support a disability determination.[75]

## REMAND

The statute[76] that governs judicial review of the Commissioner's final decisions authorizes only two kinds of remand orders: those made under sentences four and six. A sentence four remand is "proper whenever the [] court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in

---

Cir. 2004) (burden of production shifts to Commissioner at Step Five).

[71] 42 U.S.C. § 423(d)(2)(A).

[72] Docket No. 21 at 11.

[73] DEP'T OF LABOR, Dictionary of Occupational Titles (Rev. 4th ed. 1991).

[74] Docket No. 20 at 16-18.

[75] *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

[76] 42 U.S.C. § 405(g).

16

accordance with such a ruling."[77] A sentence six remand, by contrast, is allowed "in only two limited situations: (1) where the Commissioner requests a remand before answering the complaint of a claimant seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings."[78]

Neither of the sentence six conditions is present here. But sentence four applies.[79] Even so, only when "the record overwhelmingly supports" a disability finding is it proper to remand under sentence four and award benefits, as Born requests.[80] Given the lack of determinative evidence, an award—now—of benefits is not warranted. That said, a sentence four remand is still called for to develop the record further and to properly evaluate the evidence.[81]

## CONCLUSION

The ALJ should have ordered a consultative examination before determining Born's RFC. Ostrander should have provided data covering jobs in (1) the region where Born lives or (2) several regions of the country. On remand, the ALJ should order the

---

[77] *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1992)).

[78] *Id.*

[79] *See id.* at 1010-11.

[80] *Id.* at 1011.

[81] *Id.*

exam and, if Step Five is again reached, consider job numbers, consistent with the meaning of the statute. And the ALJ should determine whether the vocational evidence conflicts with the DOT and, if so, explain how he reconciled the conflict.

Accordingly, it is

ORDERED that the Commissioner's decision is REVERSED and REMANDED for reconsideration under sentence four of the statute.[82]

Born's motion to reverse,[83] is GRANTED to the extent it seeks a sentence four remand without an award of benefits. It is further

ORDERED that the Commissioner's motion to affirm[84] is DENIED.

Dated this 5th day of August, 2022, at Pierre, South Dakota.

BY THE COURT:

*signature*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[82] 42 U.S.C. § 405(g).

[83] Docket No. 17.

[84] Docket No. 19.